LAUREL GREENSTEIN
17639 Sherman Way
Suite A -#35
Van Nuys, CA 91406
Phone Number 310-339-1175

LAUREL GREENSTEIN IN PRO PER

# IN THE COURT OF APPEAL
## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | ) **Appellate Lead Case # :2:17-CV-08371- ODW** |
| LAUREL GREENSTEIN | ) Appeal from an Order of Woodland Hills |
| Debtor | ) Bankruptcy Court, |
| | ) County of Los Angeles, Case # 1:12-bk- |
| LAUREL GREENSTEIN, Plaintiff *&* | ) 15099-MB |
| *Appellant* | ) Hon. Martin Barash, Judge |
| v. | ) |
| WELLS FARGO BANK, N.A.; ROGER LIPKIS, | ) **DISTRICT COURT NUMBERS:** |
| STEVEN WOLVEK; DEAN REEVES; | ) Consolidated cases: 2:17-CV-08373- PA |
| MARISOL NAGATA; ROBERT LITTLE; | ) Consolidated cases: 2:17-CV-08899- ODW |
| ROBERT BAILEY; JOHN STUMPF; ROBERT | ) Consolidated cases: 2:17-CV-08919- ODW |
| LINDAMAN; MARTY A. DURAN; | ) Consolidated cases: 2:17-CV-08923- ODW |
| PATRICIAN M. DURAN; THE DURAN | ) |
| FAMILY TRUST; DOES I THROUGH I 0, | |
| Defendants. *& Appellees* | |

## APPELLANT'S OPENING BRIEF

LAUREL GREENSTEIN
17639 Sherman Way
Suite A -#35
Van Nuys, CA 91406
Phone Number 310-339-1175

LAUREL GREENSTEIN IN PRO PER

FILED
CLERK, U.S. DISTRICT COURT

APR  9 2018

CENTRAL DISTRICT OF CALIFORNIA
BY              DEPUTY

# IN THE COURT OF APPEAL
## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

In Re:

    LAUREL GREENSTEIN

              Debtor

LAUREL GREENSTEIN, Plaintiff / Appellant

          v.

WELLS FARGO BANK, N.A.; ROGER LIPKIS;
STEVEN WOLVEK; DEAN REEVES;
MARISOL NAGATA; ROBERT LITTLE:
ROBERT BAILEY; JOHN STUMPF; ROBERT
LINDAMAN; MARTY A. DURAN;
PATRICIAN M. DURAN; THE DURAN
FAMILY TRUST: DOES I THROUGH I 0.

Defendants. / Appellees

**Appellate Lead Case # :2:17-CV-08371- ODW**

Appeal from an Order of Woodland Hills
Bankruptcy Court,
County of Los Angeles, Case # 1:12-bk-
15099-MB
Hon. Martin Barash, Judge

**DISTRICT COURT NUMBERS:**
Consolidated cases: 2:17-CV-08373- PA
Consolidated cases: 2:17-CV-08899- ODW
Consolidated cases: 2:17-CV-08919- ODW
Consolidated cases: 2:17-CV-08923- ODW

APPELLANT'S OPENING BRIEF

- 1 -

1

*Laurel Greenstein v. Wells Fargo Bank, N.A., et. al*
**[Bankruptcy Court Case Ttitle]**
**[Appellate Case No]** 2:17-cv-08371-ODW

## CERTIFICATE OF INTERESTED PARTIES

The undersigned Appellant, self-represented, certifies that the following persons

and parties have an interest in the outcome of this case:

Wells Fargo Bank, N.A.

Steven Wolvek

Marty Duran

Patricia Duran

Dean Reeves

Marisol Nagata

John Stumpf

Robert Little

Robert Bailey

The Honorable Martin Barash, U.S. District Court Judge

2

## STATEMENT REGARDING ORAL ARGUMENT

Appellant REQUESTS oral argument.

# TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTERESTED PERSONS…………………………………i

STATEMENT REGARDING ORAL ARGUMENT…………………………...ii

TABLE OF CITATIONS…………………………………………………..iii

STATEMENT OF JURISDICTION………………………………………..

STATEMENT OF THE ISSUES…………………………………………..

STATEMENT OF THE CASE……………………………………………

    A.    PRIOR PROCEEDINGS…………………………………….

    B.    STATEMENT OF FACTS…………………………………...

    C.    STANDARD OF REVIEW………………………………….

SUMMARY OF THE ARGUMENT………………………………………...

ARGUMENT

    **I.    THE BANKRUPTCY COUTY ERRED IN RULING THAT THE LIPKIS COURT HAD JURISDICTION OVER GREENSTEIN OR HER PROPERTY**…………………

4

A. The faux "Grant Deed" on which Defendant based its stipulation for an In Rem order was not filed, nor was the property listed in Lipkis' bankruptcy........................

B. The Lipkis court did not have jurisdiction to grant an In Rem Order because Greenstein's property did not meet the Requirements for such an Order.......................

**TABLE OF CONTENTS** (Continued)

PAGE

II.   THE BANKRUPTCY COURT ERRED IN RULING THAT THE FAILURE OF PARTIES TO PROVIDE GREENSTEIN WITH NOTICE OF ACTIONS TAKEN AGAINST HER PROPERTY DID NOT CONSTITUTE A DENIAL OF DUE PROCESS.................................................................

A.  An In-rem order that was not properly served does not provide Due Process and is therefore not binding...........

B. The "In REM" Order is Void Ab Initio..............................

III.   THE BANKRUPTCY COURT ERRED IN RULING "GREENSTEIN CANNOT NOW CHALLENGE WHETHER ENTRY OF THE REM ORDER WAS JUSTIFIED OR APPROPRIATE"............

A. A Void Order can be challenged in any court at any time.......

B. The Bankruptcy Court has the authority to Grant Greenstein relief from judgment......................................................

C. No Grant Deed ever existed.............................................

IV.   THE BANKRUPTCY COURT ERRED WHEN IT RULED THAT IT WAS CLEAR THAT GREENSTEIN'S PROPERTY HAD BEEN TRANSFERRED TO LIPKIS..........................

5

A.  The court did not provide any proof or support for this erroneous statement...................................................

B.  The Bankruptcy Court erred when it stated that there is no dispute that the Lipkis Deed exists..................................

C.  The Bankruptcy Court erred when it stated that bankruptcy

**TABLE OF CONTENTS**
**(Continued)**

                                                                  PAGE

courts routinely grant relief under Bankruptcy Code Section 362(d)(4).....................................................

D.  The Bankruptcy Court erred when it assumed that had Greenstein argued the facts regarding a fraudulent grant deed it would not likely change the outcome of the case....................

V.    THE BANKRUPTCY COURT ERRED IN RULING THAT GREENSTEIN FAILED TO PLEAD ANY "EXTREME AND OUTRAGEOUS CONDUCT" THAT WOULD SATISFY A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS....................................................
        .

A.  Wells Fargo purposely submitted false statements to a court in a Stipulation, without serving Greenstein notice.....................

VI.   THE BANKRUPTCY COURT ERRED IN RULING THAT FAILURE OF APPELLEE'S COUNSEL TO DISCLOSE FACTS IN THE STIPULATION SUGGESTING THAT THE LIPKIS DEED IS A FORGERY WOULD NOT CONSTITUTE A FRAUD ON THE COURT............................................................

**A.  Appellee's Counsel violated its duty of care**……………………...

**B.  Appellee committed perjury**………………………………………

**C. Appellee submitted false evidence**…………………………………

CONCLUSION…………………………………………………………..

CERTIFICATE OF COMPLIANCE………………………………………

CERTIFICATE OF SERVICE……………………………………………..

# TABLE OF CITATIONS

## CASES

*Catlin v. United States*, 324 U.S. 229, 233 (1945)....................................11

Chambers v. NASCO, Inc., 501 U.S. 32, 35, 111 S. Ct. 2123, 2128 (1991)...............................................................................................48

*[Elliot v. Piersol, 1 Pet. 328, 340, 26 U.S. 328, 340 (1828)]*.....................33,34

Ford v. Ford (In re Ford), 159 B.R. 590, 594 (Bankr. D. Or. 1993)............26

(Frances T. v. Village Green Owners Association.) (1986) 42 Cal.3d 490......................................................................................................45

*Freedman v. Brutzkus* (March 11, 2010)............................................27

*Grannis v. Ordean* (1914) 234 U.S. 385, 34 S. Ct. 779, 58 L. Ed. 1363 [234 U.S. 385......................................................................................... 45

Granoll v. Yackle..........................................................................47

In re Carrsow-Franklin, 524 B.R. 33, 46-47 (Bankr. S.D.N.Y. 2015).....................................................................................47

*In re Davis* 177 BR 907, 911-912 (9th Cir BAP 1995).............................45

*In re Ebadi*  448 BR 308 (2011, BC ED NY)..........................................24

(*Johnson v. TRE Holdings* LLC (In re Johnson), BAP No. CC-05-1268 (9th Cir. B.A.P. 2006))....................................................................24,25,30,39,40,55

*In re Gruntz*, 202 F.3d 1074, 1082 n. 6 (9th Cir. 2000) (*en banc*).................29

In re McGinty, 119 B.R. 290, 296 (Bankr. M.D. Fla. 1990)........................25

8

*In re Stringer*, 847 F.2d 549, 550 (9th Cir. 1988)......................................29

*In re Swindle*, No. 17-18575, 2018 Bankr. LEXIS 351, at *1 (Bankr. N.D. Ill. Feb. 7, 2018)......................................................................................43

*In re Wardrobe*, 559 F3d 932, 934 (9th Cir. 2009)...................................30

*Jeff D. v. Otter*, 643 f.3d 278 (9th Cir. 2011)(citing *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004))...................................................64

*Klugh v. U.S., D.C.S.C.*, 610 F.Supp. 892, 901 .......................................33

*Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1557 (9thCir.1996))...39,64

*Lusardi*, 329 F.3d at 1080...................................................................60

*Marbury v. Madison*, 5 US 137 ...........................................................27

*Parker v. Bain*, 68 F.3d 1131, 1138 (9th Cir. 1995)..................................30

Rein v Providian, *270 F.3d 895* (9th Cir. 2001)......................................52

*Reynolds v. Volunteer State Life Ins. Co., Tex.Civ.App.*, 80 S.W.2d 1087, 1092 ...33

Rochin v. Pat Johnson Mfg. Co., 67 Cal. App. 4th 1228, 1231, 79 Cal. Rptr. 2d 719, 721 (1998)...................................................................................29

Smith v. Commissioner, 300 F.3d 1023, 1028 (9th Cir. 2002)..............................32

Steiner v. Steiner (Cal. App. 2d Dist. May 20, 1958), 160 Cal. App. 2d 665 325 P.2d 109, 1958 Cal. App. LEXIS 2170..................................................29

*Sternberg v Johnston*, 595 F.3d 937, 943 and 946-948 (9th Cir. 2010)...........43

*Sundance Land Corp. v. Community First Fed'l Sav. & Loan Ass'n*, 840 F.2d 653, 661 (9th Cir. 1988)...........................................................................43

Sundquist v. Bank of Am., N.A., 566 B.R. 563 *, 2017 Bankr. LEXIS 809 (Bankr. E.D. Cal. March 23, 2017)...............................................................42

(*Trinsey v. Pagliaro* (E.D.Pa. 1964) 229 F.Supp. 647, 649....................36,38


Williams v. Levi (In re Williams), 323 B.R. 691, 702 (9th Cir. BAP 2005)........60

Windsor v. McVeigh 93 U.S. 274..............................................................26

Woolford v. Denbow (1963, Cal App 2d Dist) 216 Cal App 2d 200, 30 Cal Rptr 794, 1963 Cal App LEXIS 2005.....................................................35,37,55

40235 Washington St. Corp. v. Lusardi, 329 F.3d 1076, 1080 (9th Cir. 2003), cert. denied, 540 U.S. 983 (2003)...............................................................60

## Federal Statutes

28 U.S.C. § 1291...............................................................................11

11 U.S.C. § 362.............................................................................

11 U.S.C.S. § 362(k)(1).....................................................................

*Title 5, US Code Sec. 556(d), Sec. 557, Sec.706:* ... ... ... ... ... ... ...28

*American Jurisprudence Book 16: Constitution Law Section 16Am Jur 2d:*

*16 AmJur2d., Sec. 97* ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...28

## California Stautes

*California Evidence Code*
*1401* ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...*24,36*

Cal Civ Code § 1054............................................................29

Cal Code Civ Proc § 2015.5.....................................................29,47

Cal Rules of Court, Rule 8.200.................................................35,37,56

California Business and Professions Code Section 6068(d).......................44

California Business and Professions Code Section 6128...........................44

## SUBJECT MATTER JURISDICTION

Plaintiff-Appellant appeals from the October 31, 2017 Judgments of The

United States Bankruptcy Court for The Central District of California, Granting

Motions to Dismiss Without Leave to Amend of Defendant-Appellees Steven

A.Wolvek; Marty and Patricia Duran; Marisol Nagata; and Wells Fargo Bank.

(Docket #s 121, 122, 123, 124.)

Additionally, Plaintiff-Appellant appeals from the October 31, 2017

Judgment of The United States Bankruptcy Court for The Central District of

California, Denying the Motion of Plaintiff-Appellant to Set Aside Foreclosure

Sale Made in Violation of the Automatic Stay.

This Court has jurisdiction over the appeals under 28 U.S.C. § (a)(3) because

the orders appealed from are final decision. *See Catlin v. United States*, 324 U.S.

229, 233 (1945) (For purposes of 28 U.S.C. § 1291, a final decision is one that

"ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.").

## STATEMENT OF THE ISSUES

1. Was the "In Rem" order in Lipkis' bankruptcy void ab initio?

2. Was the foreclosure sale made in violation of the Automatic Stay?

3. Did Wells Fargo Bank commit fraud and perjury?

4. Did Wells Fargo Bank submit false evidence?

5. Did Steven Wolvek commit perjury?

6. Was the court wrong in saying a Grant Deed transferring the property from Laurel Greenstein to Roger Lipkis exists?

7. Was the court wrong in saying the property was transferred from Laurel Greenstein to Roger Lipkis

## STATEMENT OF THE CASE

### A.    Prior Proceedings

Appellant was making payments according to the Unemployment Forbearance Plan the plan on which Wachovia bank had placed her. On month (Request for Judicial Notice and Notice of Motion and Motion to Accept New Evidence, Docket

12

#105) number five of the six-month plan, she received a Notice of Intent to Foreclose. After much communication between Plaintiff and Wachovia, Plaintiff filed state court case #LC095160 (Docket 10/13/2011). At some point, Wachovia became Wells Fargo Bank, N.A.

During that state court case, on February 10, 2012, Wells Fargo Bank produced a copy of a fax it claimed was a Grant Deed showing Appellant had transferred her property to a person by the name of Roger Lipkis. Immediately upon being shown the purported deed on February 10, 2012, Appellant advised Wells Fargo Bank that the document was a forgery.  Appellant investigated and found it appeared to be a cut-and-paste job. The recording number on the alleged Grant Deed in fact was for another document, ie a tax lien for an unrelated party. " (Request for Judicial Notice and Notice of Motion and Motion to Accept New Evidence, exhibit 2, Docket #105.)

On February 15, 2012, Appellant provided Wells Fargo Bank with proof that the purported deed was indeed NOT valid. On February 15, 2012, she sent Wells Fargo Bank an email detailing facts supporting that the purported deed was not valid, and she mailed those details to Wells Fargo Bank, Certified Mail, Return Receipt Requested. (First Amended Complaint in Adversary Proceeding #1:15-ap-01220-MB, exhibits F and K, (Docket #30).

On February 17, 2012, Appellant filed a motion and noticed Wells Fargo Bank, and served it with said motion, which detailed the information and provided proof that the purported deed was not valid. First Amended Complaint in Adversary Proceeding #1:15-ap-01220-MB, exhibits F, (Docket# 30)

On May 31, 2012, appellant filed for a Chapter 7 bankruptcy to protect her $175,000 homeowner's exemption in her single-family residence. She listed her mortgage holder, Wells Fargo Bank, N.A. as a debtor and obtained the automatic stay. (Docket#?) First Amended Complaint in Adversary Proceeding #1:15-ap-01220-MB, exhibit L, (Docket#30)

On or about June 1, 2012, she was told Wells Fargo Bank was going to sell her home despite the automatic stay in her Chapter 7 bankruptcy.

Wells Fargo told her it had an In-Rem Order that allowed it to sell her property despite the automatic stay. She was sent a copy of the In-Rem Order. (Request for Judicial Notice and Notice of Motion and Motion to Accept New Evidence, exhibit 4 (Docket # 105).

Appellant ascertained the In-Rem Order was obtained in the Chapter 13 bankruptcy of Roger Lipkis based on a Stipulation made by Roger Lipkis' attorney and an attorney for Wells Fargo Bank. (Case #1:11-bk-23430-MT filed November 18, 2011.)  Roger Lipkis did not list this property in his bankruptcy and had no

knowledge of it. First Amended Complaint in Adversary Proceeding #1:15-ap-01220-MB, exhibit I, (Docket #30)

The In Rem Order was obtained by submitting a form fill-in-the-blanks, check-the-boxes Stipulation and Order to the Judge in the Lipkis bankruptcy. The clerk of the court apparently rubber-stamped the order on March 19, 2012, giving Wells Fargo the requested In Rem Order.

Appellant was never advised that Wells Fargo was going to submit the Stipulation and Order to get an In-Rem Order. At all times, Wells Fargo knew Appellant's address and phone number. (See Service List, " (Request for Judicial Notice and Notice of Motion and Motion to Accept New Evidence, exhibit 4, (Docket #105.)

Appellant contacted the Notary alleged to have notarized her signature on the Grant Deed. Appellant obtained a declaration from the Notary that she did not sign the alleged Grant Deed and that someone had clearly copied her notarial stamp and signature, and this had happened before. (Request for Judicial Notice and Notice of Motion and Motion to Accept New Evidence, exhibit 3 Docket # 105)

Appellant advised Wells Fargo of the above. Wells Fargo ignored what plaintiff showed it and sold plaintiff's home on July 11, 2012 to itself.

Appellant was evicted from her home on or about December 24, 2012 by an Unlawful Detainer action (#12B07622). Appellant vacated it on May 5, 2013.

On December 27, 2013, Plaintiff filed a Motion to Set Aside Foreclosure Sale Made in Violation of the Automatic Stay. (Docket 12/27/2013)

The motion was set for February 12, 2014 and heard on said date.

Appellant's motion argued that the sale of her home by Wells Fargo was in violation of the automatic stay in her Chapter 7 bankruptcy issued prior to the sale and known to Wells Fargo.

On February 7, 2014, Judge Ahart  "entered an order granting Wells Fargo's motion to dismiss and dismissing the Second Adversary Proceeding with prejudice. "For reasons unknown, and without ever conducting a hearing, Judge Ahart then entered an order granting Wells Fargo's motion to dismiss and dismissing the Second Adversary Proceeding with prejudice on February 7, 2014, even though the proceeding had already been dismissed and closed on July 24, 2013." (Quote from Amended Memorandum of BAP in CC-14-1101-KiBrD)

Plaintiff prevailed on her appeal. The BAP vacated and remanded the motion back to the lower court.

The lower court again ruled against Greenstein. Once again, she is appealing the order of that court (Dockets #s 120,130).

16

No original Grant Deed has ever been produced.

**B.**    **Statement of Facts**

Please see Appellant's First Amended Complaint of Adversary Proceeding
#1:15-ap-01220-MB in her bankruptcy for a more detailed statement of facts and
background (Docket # 30 ). Herein is an abbreviated version:

In October 2011, Plaintiff started on a six-month Unemployment Forbearance
Plan on her loan held by Wells Fargo Bank, N.A. Despite the fact that she was
making her mortgage payments every month, on or about February 9, 2011, Wells
Fargo Bank, N.A. sent plaintiff a Notice of Intent to Foreclose on her property at
5160 Llano Dr., Woodland Hills, California, 91364, (hereinafter "property").

On October 13, 2011, Plaintiff filed Case #LC095160 in Los Angeles
Superior Court against Wells Fargo Bank, N.A. challenging the its foreclosure
against her home (hereinafter, "State court case") and was granted a Temporary
Restraining Order on November 22, 2011 against Wells Fargo Bank, N.A. selling
her house. (Request for Judicial Notice and Notice of Motion and Motion to
Accept New Evidence, exhibit 5, Docket #105)

On February 10, 2012, at a Case Management hearing in the state court case,
Wells Fargo Bank, N.A., through its attorney Dean Reeves, produced a purported
copy of a Grant Deed (hereinafter "deed") showing Plaintiff had transferred her

17

property to Roger Lipkis (First Amended Complaint in Adversary Proceeding #1:15-ap-01220-MB, exhibit D, (Docket # 30). At that hearing, plaintiff was represented by attorney Michael Echevarria. Plaintiff was present in the courtroom. At that hearing, attorney Dean Reeves was present for Wells Fargo Bank, N.A. and showed the court a copy of a purported deed alleged to have been signed by plaintiff transferring her property to Roger Lipkis.

At all times herein, plaintiff was the owner and entitled to possession of the property at 5160 Llano Dr. Woodland Hills, California 91364.

As set out above, prior to the unlawful transfer of the property mentioned in this action, plaintiff was the owner and has been for more than 10 years, entitled to possession of the property; the legal description of said property is Lot 4092, Tract No. 6170, in the city of Los Angeles county of Los Angeles, state of California, as per map recorded in book 84, pages 82 through 84, inclusive of, in the office of the county recorder of said county, commonly known as 5160 Llano Drive, Woodland Hills, California, 91364.

Plaintiff contends that all orders directed to or against her property, made by Judge Tighe, the judge handling the Chapter 13 bankruptcy of Roger Lipkis, were void ab initio due to lack of subject matter jurisdiction. Such orders include:

1) Order Granting Relief (also known as Order Granting Relief to
   Modify/Terminate the Automatic Stay Under 11 U.S.C. § 362 (Real

Property) (Request for Judicial Notice and Notice of Motion and
Motion to Accept New Evidence, Exhibit 4 (Docket 105)

2) Order Denying Motion for Reconsideration of Order Granting Relief
from Automatic Stay (Request for Judicial Notice and Notice of
Motion and Motion to Accept New Evidence Exhibit 6, Docket #
105)

3) Order Denying Amended Motion for Reconsideration of Order Granting
Relief from Automatic Stay (Request for Judicial Notice and Notice
of Motion and Motion to Accept New Evidence Exhibit 6, (Docket
# 105)

4) Order Denying Motion for Contempt (Request for Judicial Notice and
Notice of Motion and Motion to Accept New Evidence Exhibit 6,
Docket # 105)

The Lipkis court lacked jurisdiction for the following reasons:

A)      The property was not listed in any bankruptcy in Judge Tighe's court,
        or any other court for that matter.

B)      Plaintiff did not have a bankruptcy pending.

C)      The property or any interest therein had never been transferred to
        Roger Lipkis, by any person or legal process or otherwise, nor had

any attempt to transfer the property, or any interest therein, been
made.

D)      Roger Lipkis did not claim any ownership of the property. He never
claimed any ownership of or interest in the property.

E)      The property was not listed in Roger Lipkis' bankruptcy.

F)      Roger Lipkis denies knowledge of a transfer of the property being
made to him.

G)      The owner of the property (Appellant in this matter) was not served
notice that action was being taken on her property.

H)      The attorneys who made a stipulation regarding Appellant's property
knew statements within it were false.


No document has ever been recorded with the County Recorder of Los
Angeles showing transfer in whole or in part of the property from Appellant to
Roger Lipkis. Request for Judicial Notice and Notice of Motion and Motion
to Accept New Evidence, exhibit 1 Docket # 105 is a certified letter from
County Recorder stating that a document search was conducted and no Grant Deed
was found in the records.

Plaintiff further contends that the Lipkis court lacked jurisdiction for the following specific reasons:

1) On or about March 19, 2012, Wells Fargo Bank, N.A., through its attorney, Marisol Nagata, and Steven Wolvek, attorney for Roger Lipkis, presented a Stipulation to Modify/Terminate the Automatic Stay Under 11 U.S.C. § 362 (Real Property) containing an Order lifting the (non-existent) automatic stay on the property of plaintiff. First Amended Complaint in Adversary Proceeding #1:15-ap-01220-MB, exhibit I, (Docket # 30) (It is within the "Order.)

2) Plaintiff was never given notice of the intended submission of the Stipulation to Modify/Terminate the Automatic Stay Under 11 U.S.C. § 362 (Real Property) ("Stipulation"). ("Service List", First Amended Complaint in Adversary Proceeding #1:15-ap-01220-MB, exhibit I, (Docket # 30)

3) Plaintiff never had an opportunity to present evidence to Judge Tighe as to the falsity of the statements in the stipulation submitted to the judge.

4) Wells Fargo Bank, N.A. and its attorneys, at all times, including prior to the submission of the Stipulation and Order, knew plaintiff's address, phone number and email address, had used them previously to contact her, and could have easily given her notice of the proposed submission.

5) Wells Fargo Bank, N.A. and its attorneys intentionally did an "end run" around plaintiff by not telling her of the proposed submission of the Stipulation to Modify/Terminate the Automatic Stay Under 11 U.S.C. § 362 (Real Property).

6) The Stipulation contained assertions that Wells Fargo Bank, N.A. and attorneys Marisol Nagata and Steven Wolvek knew were untrue, or in the exercise of reasonable investigation, would have found the alleged deed had never been recorded and in fact, no original ever existed.

7) In many instances, but particularly on February 17, 2012, well before the submission of the Stipulation to Modify/Terminate the Automatic Stay Under 11 U.S.C. § 362 (Real Property) to Judge Tighe, Appellant gave more than sufficient notice to Wells Fargo Bank, N.A. and its attorneys that the alleged deed was fake and enough specific information that they could use to verify this fact. (First Amended Complaint in Adversary Proceeding #1:15-ap-01220-MB, exhibits F and K, (Docket # 30 )

8) All this above information provided Wells Fargo Bank, N.A. and its attorneys was ignored by Wells Fargo Bank, N.A. and its attorneys, yet, as Officers of the Court, they continued to put before the courts documents indicating that a grant deed, signed by plaintiff and giving the property to Lipkis, had been recorded.

9) On information and belief, the grant deed alleged herein was created by Wells Fargo Bank, N.A. using persons unknown to plaintiff but whose identities are known to officers and employees of Wells Fargo Bank, N.A.

10)    Wells Fargo Bank, N.A. has a well-documented history of illegally creating false and forged documents for the purpose of foreclosing on homes of individuals on which Wells Fargo Bank, N.A. held loans. There has been so much publicity of this that it has become "general public knowledge."

Additionally, Greenstein filed Adversary Proceeding #1:12- ap-01220-MB listing as causes of action Lack of LACK OF JURISDICTION; DENIAL OF DUE PROCESS; VIOLATION OF THE AUTOMATIC STAY, FRAUD; CONSTRUCTIVE FRAUD; INTENTIONAL/NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; PERSONAL INJURY; DECLARATORY RELIEF; QUIET TITLE; PERJURY; and OFFERING FALSE EVIDENCE.

The court issued five separate orders and one Memorandum of Decision on October 31, 2017. Greenstein is appealing all of those orders, which have been consolidated by this court. (Appellate Lead Case # :2:17-CV-08371- ODW; 2:17-CV-08373- PA; 2:17-CV-08899- ODW;2:17-CV-08919- ODW; 2:17-CV-08923- ODW)

**C. Standard of Review**

## SUMMARY OF THE ARGUMENT

The foreclosure sale took place in violation of the automatic stay. The "in rem" order on which Wells Fargo Bank, N.A. was relying was void ab initio because the court that granted it did not have jurisdiction. It was granted based on a stipulation that included false statements by attorneys who had no authority to enter into the stipulation and who knew the statements were false. The reqirement for an In Rem order were not met. Most importantly, the property owner was denied Due Process because her interest in the property was known by the attorneys who submitted the stipulation, but she was not served notice of the stipulation or order.

## ARGUMENT

## I.  THE BANKRUPTCY COUTY ERRED IN RULING THAT THE LIPKIS COURT HAD JURISDICTION OVER GREENSTEIN OR HER PROPERTY.

### A. The faux "Grant Deed" on which Defendant based its stipulation for an In-Rem order was not filed, nor was the property listed in Lipkis' bankruptcy.

Defendants knew that Greenstein was disputing the validity of the alleged Grant Deed and either knew it to be invalid or, with due diligence, would have known such fact. Greenstein was never served notice of any proceeding regarding her property.

Additionally, the Lipkis court did not have jurisdiction to grant an In Rem order because her property did not meet the requirements for such an order. (*Johnson v. TRE Holdings* LLC (In re Johnson), BAP No. CC-05-1268 (9th Cir. B.A.P. 2006)) The court did not make a finding of a scheme; no property was transferred; and Greenstein's property did not have multiple bankruptcies. Any violation of 11 USC §362 must be based on one's own bankruptcy case. *See California Evidence Code 1401*:

§ 1401. Authentication required

(a) Authentication of a writing is required before it may be received in evidence.

(b) Authentication of a writing is required before secondary evidence of its content may be received in evidence.

### B. The Lipkis court did not have jurisdiction to grant an In Rem Order because Greenstein's property did not meet the Requirements for such an Order

Greenstein had not even filed bankruptcy. The faux "Grant Deed" on which Defendant based its stipulation for an In Rem order was not filed, nor was the property listed in Lipkis' bankruptcy. Defendants knew that Greenstein was disputing the validity of the alleged Grant Deed and either knew it to be invalid or, with due diligence, would have known such fact. Greenstein was never served notice of any proceeding regarding her property.

The court did not make a finding of a scheme; no property was transferred;

and Greenstein's property did not have multiple bankruptcies. Any

violation of 11 USC §362 has to be based on one's own bankruptcy

case. *In re Ebadi*  448 BR 308 (2011, BC ED NY). (*Johnson v. TRE*

*Holdings* LLC (In re Johnson), BAP No. CC-05-1268 (9th Cir. B.A.P. 2006))

Any judicial proceeding in violation of an automatic stay in place pursuant

to 11 USC §362 was void ab initio. *In re Gruntz*, 202 F.3d 1074, 1082 n. 6 (9th

Cir. 2000) (*en banc*).

## II.   THE BANKRUPTCY COURT ERRED IN RULING THAT THE FAILURE OF PARTIES TO PROVIDE GREENSTEIN WITH NOTICE OF ACTIONS TAKEN AGAINST HER PROPERTY DID NOT CONSTITUTE A DENIAL OF DUE PROCESS

### A.  An In-rem order that was not properly served does not provide Due Process and is therefore not binding.

In the case at bar, the court argued that the In-Rem's order allows for

it to be challenged <u>after</u> its power had been used. This is the equivalent of

someone being wrongly convicted of a crime, imprisoned, and being

allowed to defend herself only after the term of imprisonment was served.

**"The fundamental requirement of due process, the right to be heard, is**

**meaningless without notice**. An elementary and fundamental requirement of due

process in any proceeding which is to be accorded finality is notice reasonably

calculated, under all of the circumstances, to apprise interested parties of the

*pendency* of the action and afford them an opportunity to present their objections."

Ford v. Ford (In re Ford), 159 B.R. 590, 590 (Bankr. D. Or. 1993)


Greenstein had opportunity to sell the property rather than file for

bankruptcy to get the $175,000 Homeowner's Exemption. Instead, she was

forced to challenge the order, after eviction, not from the conveniences of

her office-equipped home, but from a disadvantaged state of homelessness.

The bankruptcy court erred when it stated that Greenstein was not

deprived of procedural due process. MS. Greenstein was not served

notice that any proceeding was taking place regarding her property.

**Windsor v. McVeigh 93 U.S. 274**

*Syllabus*

1. A sentence of a court, pronounced against a party without hearing him or giving

him an opportunity to be heard, is not a judicial determination of his rights and is

not entitled to respect in any other tribunal.

2. The jurisdiction acquired by the seizure of property in a proceeding *in rem* for

its condemnation for alleged forfeiture is not to pass upon the question of forfeiture

absolutely, but to pass upon that question after opportunity has been afforded to its

owner and parties interested to appear and be heard upon the charges for which the forfeiture is claimed. To that end, some notification of the proceedings, beyond that arising from the seizure, prescribing the time within which the appearance must be made is essential.

## I. Genesis of Due Process Found in the U.S. Constitution

Section One of the Fourteenth Amendment to the U.S. Constitution states in relevant part:

> "…[N]or shall any State deprive any person of life, liberty, or property, without **due process** of law…." (Emphasis added.)

The U.S. Supreme Court has published many opinions on this issue and has arrived at the conclusion that due process is essentially the right of a party to be provided "notice" and "an opportunity to be heard" on all issues in dispute.

In the U.S. Supreme Court case of **Grannis v. Ordean** (1914) 234 U.S. 385, 34 S. Ct. 779, 58 L. Ed. 1363 [234 U.S. 385 (lexis.com)], the Court stated, "The fundamental requisite of due process of law is the **opportunity to be heard**.

The 5th Amendment states:  "No person shall be….deprived of life, liberty, or property without due process of law; nor shall private property be taken for public use without just compensation."

The Constitution is "the highest law of the land." Any law that is in contradiction to any part of it is unconstitutional. An In-rem order that was not properly served does not provide Due Process and is therefore not binding. A sentence on an order that is void ab initio does not provide Due Process. *Marbury v. Madison, 5 US 137:*

*"The Constitution of these United States is the supreme law of the
land. Any law that is repugnant to the Constitution is null and void of law."
Also, Title 5, US Code Sec. 556(d), Sec. 557, Sec.706:
Courts lose jurisdiction if they do not follow Due Process Law.*

*American Jurisprudence Book 16: Constitution Law Section 16Am Jur
2d: 16 AmJur2d., Sec. 97:"Then a constitution should receive a literal
interpretation in favor of the american, is especially true, with respect to
those provisions which were designed to safeguard the liberty and security
of the american in regard to person and property.*

### B. The "In REM" Order is Void Ab Initio

The bankruptcy court erred when it stated that by the time Greenstein
commenced the first of her efforts to seek relief from the In-Rem Order, it
was too late.

The laws are clear that a void order can be challenged in any court at
any time, including during the appellate process; as such, Greenstein hereby
seeks relief from the Void order referred to as the "In Rem" Order in the
Lipkis bankruptcy, and cites the case laws provided herein for support.

On appeal, Justice Greaney, speaking for the Court, held that the automatic
stay imposed by the Bankruptcy Code applies without regard to whether the

underlying debt is or is not dischargeable and any proceeding in violation of the automatic stay is void. In re McGinty, 119 B.R. 290, 296 (Bankr. M.D. Fla. 1990).

11 U.S.C.S. § 362(a)(1) of the Bankruptcy Code automatically stays the commencement or continuation of judicial proceedings against the debtor that were or could have been commenced before the bankruptcy petition was filed. Any proceedings in violation of the automatic stay in bankruptcy are void. In re Stringer, 847 F.2d 549, 550 (9th Cir. 1988)

A judgment void on its face because rendered when the court lacked personal or subject matter jurisdiction or exceeded its jurisdiction in granting relief which the court had no power to grant, is subject to collateral attack at any time. An attack on a void judgment may also be direct, since a court has inherent power, apart from statute, to correct its records by vacating a judgment which is void on its face, for such a judgment is a nullity and may be ignored. Rochin v. Pat Johnson Mfg. Co., 67 Cal. App. 4th 1228, 1231, 79 Cal. Rptr. 2d 719, 721 (1998)

Cal Civ Code § 1054, Deed secured by fraud is invalid and subject to cancellation. Steiner v. Steiner (Cal. App. 2d Dist. May 20, 1958), 160 Cal. App. 2d 665 325 P.2d 109, 1958 Cal. App. LEXIS 2170.

Cal Code Civ Proc § 2015.5, Whenever, under any law of this state or

under any rule, regulation, order or requirement made pursuant to the law of this state, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn statement, declaration, verification, certificate, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may with like force and effect be supported, evidenced, established or proved by the unsworn statement, declaration, verification, or certificate, in writing of such person which recites that it is certified or declared by him or her to be true under penalty of perjury, is subscribed by him or her, and (1), if executed within this state, states the date and place of execution, or (2), if executed at any place, within or without this state, states the date of execution and that it is so certified or declared under the laws of the State of California.

Any act taken in violation of an automatic stay in bankruptcy (11 USC §362) is void. *Parker v. Bain*, 68 F.3d 1131, 1138 (9th Cir. 1995). See also, *In re Wardrobe*, 559 F3d 932, 934 (9th Cir. 2009)...........................................

Johnson v. TRE Holdings, LLC (In re Johnson) United States Bankruptcy Appellate Panel for the Ninth Circuit May 18, 2006, Argued and Submitted at Pasadena, California; July 7, 2006, Filed BAP No. CC-05-1268-KPaB

"The structure of what Congress deemed it necessary to do in the post-2005

regime embodied by §§ 362(b)(20) and (d)(4) confirms the validity of our conclusion that the pre-2005 Code did not authorize an "in rem" stay relief order to trump the automatic stay in future cases."

The bankruptcy court erred when it stated that the Lipkis court made an express factual finding in the In-Rem Order that a transferred occurred. (Memorandum of Decision, p. 27, lines 25 and 26.)

There is no indication that the Lipkis court did anything other than "rubber stamp" an order because a Stipulation, signed by two attorneys, had been submitted to a court. There was no hearing on the merits, as Greenstein never had the opportunity to argue against it because she was not served notice; she was denied procedural Due Process.

"A Movant must establish three elements to obtain relief under section 362(d)(4) : (i) the debtor's bankruptcy filing must have been part of a scheme, (ii) the scheme must involve either (a) the transfer of interest in real property without the secured creditor's consent or court approval or (b) multiple bankruptcy filings affecting the property.  See 11 U.S.C. §362(d)(4). *For the court to grant relief*, "*it **must affirmatively** find that the three elements are present.*" In re First Yorkshire Holdings, Inc. 470 B.R. at 870 (citing in re Abdul Muhaimin, 343 B.R. 159, 169 (Bankr. D. Md.2006)).

Judge Tighe, the judge in the bankruptcy of Roger Lipkis, made a fatal error by accepting a stipulation and the entire basis for the granting of an "In Rem" order.

The court of appeals reviews for clear error where:

Findings of fact are based on stipulations. *See Smith v. Commissioner*, 300 F.3d 1023, 1028 (9th Cir. 2002).

Lipkis' attorney, who admitted he signed the stipulation as a favor to a colleague, and apparently without his client's knowledge, signed it "approved as to form and content." "The signature block on a contract bears an attorney signature under the legend "approved as to form and content." Does that signature amount to an actionable representation to an opposing party''s attorney? We conclude that it does not." *Freedman v. Brutzkus* (March 11, 2010).

We can't surmise how Judge Maureen Tighe would have ruled if Greenstein had the opportunity to argue against an In rem order in her court. We don't know how Judge Tighe would have ruled if she had been presented with the truth and evidence supporting it.

## III.  THE BANKRUPTCY COURT ERRED IN RULING "GREENSTEIN CANNOT NOW CHALLENGEWHETHER ENTRY OF THE IN-REM ORDER WAS JUSTIFIED OR APPROPRIATE."

### A.  A void order can be challenged in any court at any time.

Greenstein hereby challenges it in this court through this appeal and cites the case laws provided herein for support.

"A void order can always be attacked.   A judgment is a "void judgment" if the court that rendered such judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process." *Klugh v. U.S., D.C.S.C., 610 F.Supp. 892, 901.* One which has no legal force or effect, invalidity of which may be asserted by any person whose rights are affected at any time and at any place directly or collaterally. *Reynolds v. Volunteer State Life Ins. Co., Tex.Civ.App., 80 S.W.2d 1087, 1092.* Under Federal law which is applicable to all states, the U.S. Supreme Court stated that if a court is *"without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered, in law, as trespassers...* A void judgment is not entitled to the respect accorded a valid adjudication, but may be entirely disregarded, or declared inoperative by any tribunal in which effect is sought to be given to it. All proceedings founded on the void judgment are themselves regarded as invalid," 30A Am Jur Judgments. " *[Elliot v. Piersol, 1 Pet. 328, 340, 26 U.S. 328, 340 (1828)].*

The Amended Memorandum of the BAP filed June 26, 2016:

Also: We disagree with Wells Fargo's contention that this appeal is "moot."

Because Debtor was seeking stay violation damages under § 362(k), this appeal

would never be moot. Further, it does not appear from the record that Wells Fargo

has sold the Property to a third party. Even if it has, that fact would not absolve

Wells Fargo from any potential stay violation damages."

### B. The Bankruptcy Court had the authority to Grant Greenstein Relief from the Void Judgment

The bankruptcy court erred when it stated that the bankruptcy court in

her case does not have authority to grant relief from any order other than its

own records.

Again, **ANY COURT**, ANY TIME.

"A void judgment is not entitled to the respect accorded a valid adjudication,

but may be entirely disregarded, or declared inoperative by **any tribunal** in which

effect is sought to be given to it." 30A Am Jur Judgments. " *[Elliot v. Piersol, 1*

*Pet. 328, 340, 26 U.S. 328, 340 (1828)].*

### C. No Grant Deed Ever Existed

The bankruptcy court erred when it stated that a grant deed transferring title to the Property from Debtor to Roger Lipkis appeared to be recorded.

There is nothing to show that the alleged but fake Grant Deed had ever been recorded. The court relied on the statement of Wells Fargo Bank's lawyer that at "some point," Wells Fargo Bank determined that it had been recorded. That was never stated by anyone from Wells Fargo Bank. There was no support and Greenstein never had the opportunity to query Wells Fargo Bank as to how, whom and when that "determination" was made, by what method it was "determined" and what facts supported that conclusion. Attorneys cannot testify and without a verified complaint and actual testimony, the attorney testimony is not valid. The party itself must testify, as noted above.

It has long been considered a rule of law that matters not presented by record may not be supplied either by statements of counsel in brief or by purported copies of documents printed therein. Woolford v. Denbow (1963, Cal App 2d Dist) 216 Cal App 2d 200, 30 Cal Rptr 794, 1963 Cal App LEXIS 2005.  Cal Rules of Court, Rule 8.200

The defendants' motion to dismiss for failure to state a claim unsupported by affidavits or depositions is incomplete because it requests this Court to consider facts outside the record which have not been presented in the form required by

Rules 12(b)(6) and 56(c). Statements of counsel in their briefs or argument while enlightening to the Court are not sufficient [**5] for purposes of granting a motion to dismiss or summary judgment. (*Trinsey v. Pagliaro* (E.D.Pa. 1964) 229 F.Supp. 647, 649.

California Evidence Code 1401:

§ 1401. Authentication required

(a) Authentication of a writing is required before it may be received in evidence.

(b) Authentication of a writing is required before secondary evidence of its content may be received in evidence.

Greenstein provided proof that the purported "Grant Deed" was not valid; such proof was sent by the way of an email to Wells Fargo Bank, a letter mailed Certified to Wells Fargo Bank, and a court hearing (which was decided in her favor). (First Amended Complaint in Adversary Proceeding #1:15-ap-01220-MB, exhibits F and K, (Docket #30) Thereby, Wells Fargo was aware of the invalidity of the certificate it referred to as a "Grant Deed" prior to getting the "In Rem" order and having that order recorded. The proof was included a declaration made under penalty of perjury by Greenstein that she did not sign the document and did not know Roger Lipkis, (First Amended Complaint in Adversary Proceeding #1:15-ap-01220-MB, exhibits F and K, (Docket (Docket # 30) a declaration made under penalty of

perjury from the Notary that she did not notarize that document, (First

Amended Complaint in Adversary Proceeding #1:15-ap-01220-MB, exhibit E,

(Docket # 30) a certified letter from the Recorder's Office that the document

was not found, (First Amended Complaint in Adversary Proceeding #1:15-ap-

01220-MB, exhibit J, (Docket #30) and a certified copy of the same

Recorder's number on a Tax Lien for an unrelated party (Request for

Judicial Notice and Notice of Motion and Motion to Accept New Evidence,

exhibit 2, Docket 105).

## IV. THE BANKRUPTCY COURT ERRED WHEN IT RULED THAT IT WAS CLEAR GREENSTEIN'S PROPERTY HAD BEEN TRANSFERRED TO LIPKIS

### A. The court did not provide any proof or support for this erroneous statement.

Greenstein's property had never been transferred to Lipkis. Greenstein

proved that her property had never been transferred to Lipkis, and, at this

point, even Wells Fargo Bank isn't trying to claim that it was.

It has long been considered a rule of law that matters not presented by record

may not be supplied either by statements of counsel in brief or by purported

copies of documents printed therein. Woolford v. Denbow (1963, Cal App 2d

Dist) 216 Cal App 2d 200, 30 Cal Rptr 794, 1963 Cal App LEXIS 2005. Cal

Rules of Court, Rule 8.200

The defendants' motion to dismiss for failure to state a claim unsupported by

affidavits or depositions is incomplete because it requests this Court to consider

facts outside the record which have not been presented in the form required by

Rules 12(b)(6) and 56(c). Statements of counsel in their briefs or argument while

enlightening to the Court are not sufficient [**5] for purposes of granting a motion

to dismiss or summary judgment. (*Trinsey v. Pagliaro* (E.D.Pa. 1964) 229 F.Supp.

647, 649.)

### B. The bankruptcy court erred when it stated that there is no dispute that the Lipkis Deed exists. (Memorandum of Decision, p.29, line 8)

There absolutely **IS** a dispute that the Lipkis deed exists. Nobody has

ever presented an original document BECAUSE **it does not exist** and never

has.  There is a photo-shopped page that *looks* like a Grant Deed, but that

doesn't make it a Grant Deed. If someone photo-shopped a photo of wings

onto a photo of a pig, that doesn't mean there is such a thing as a flying

pig...and certainly not a photo of such a creature.  Wells Fargo Bank only

referenced a purported faxed copy of it at a Status Conference in Case

#LC095160 without advance notice to the court or Greenstein and/or her

attorney and did not put any copy of it into evidence.  Judge Adler noted

that in his decision. (Minutes, 5/11/12, Case #LC095160, "The court notes

that the order reclassifying the matter was not made on a noticed motion. Instead, the order was issued at a status conference and the court recognizes that plaintiff and her counsel had not had the opportunity to review the purported Grant Deed." (First Amended Complaint in Adversary Proceeding #1:15-ap-01220-MB, exhibit G, (Docket # 30.)

A court abuses its discretion 'when it bases its decision on an erroneous view of the law or a clearly erroneous view of the facts.'" *First Fed. Bank of Cal. v. Cogar (In re Cogar), 210 B.R. 803, 808 (B.A.P 9th cir. 1997* (internal citation omitted) (quoting *Lewis v. Tel. Employees Credit Union,* 87 F.3d 1537, 1557 (9thCir.1996)).

**C.** The bankruptcy court erred when it stated that bankruptcy courts routinely grant relief under Bankruptcy Code section 362(d)(4). *Johnson v. TRE Holdin*gs, ___ B.R. ___, 2006 wl 2065565 (9th Cir. BAP 2006). "Although some bankruptcy judges have refused to grant "in rem" relief,"

**D.** The bankruptcy court erred when it assumed that if the Lipkis court been presented with all the facts of the fake grant deed and information and arguments Ms. Greenstein might have argued at a hearing on the requested in rem order, it would not likely change the outcome. *Johnson v. TRE Holdin*gs, ___ B.R. ___, 2006 wl 2065565 (9th Cir. BAP 2006).. The recent BAP ruling, written by the Honorable Christopher Klein, United States

Bankruptcy Judge in the United States Bankruptcy Court for the Eastern District of California, Sacramento Division, concludes that there is no statutory or other legal basis for the practice, casting doubt on the validity and enforceability of such orders throughout California. Creditors can no longer proceed with foreclosure sales in reliance upon "in rem" stay relief orders when a new bankruptcy petition is filed before the sale date. A new stay relief order must be obtained in each successively-filed bankruptcy case. Any sale held without a new stay relief order will be null, void and of no legal force or effect."

Some courts do deny In Rem orders. *Johnson v. TRE Holdin*gs, ___ B.R. ___, 2006 wl 2065565 (9th Cir. BAP 2006). "Although some bankruptcy judges have refused to grant "in rem" relief,"

Greenstein's property did not meet the requirement of having been listed in multiple bankruptcies. There was nothing to substantiate that the fake Grant Deed was created by Greenstein or had anything to do with her Automatic Stay if she chose to file bankruptcy.

The Bankruptcy Appellant court took the position:

"Procedural Due Process We do not reach the question of whether procedural due process was satisfied when, after Debtor had informed Wells Fargo's counsel that she challenged the validity of the Lipkis Deed, Wells Fargo apparently failed to notice Debtor of the stipulation for in rem relief from stay or

its motion for approval of it. Debtor was, after all, the borrower and the record

title holder if her allegation was correct – clearly someone whose property interest

would be affected if in rem relief were granted." See Ford v. Ford (In re Ford),

159 B.R. 590, 594 (Bankr. D. Or. 1993)."

In a judicial proceeding, procedural due process requires that individualized

notice be given before rights can be affected. **The fundamental requirement of**

**due process, the right to be heard, is meaningless without notice**. An

elementary and fundamental requirement of due process in any proceeding which

is to be accorded finality is notice reasonably calculated, under all of the

circumstances, to apprise interested parties of the ***pendency*** of the action and

afford them an opportunity to present their objections. Ford v. Ford (In re Ford),

159 B.R. 590, 590 (Bankr. D. Or. 1993)

### V.    THE BANKRUPTCY COURT ERRED IN RULING THAT GREENSTEIN FAILED TO PLEAD ANY "EXTREME AND OUTRAGEOUS CONDUCT" THAT WOULD SATISFY A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

#### A.  Wells Fargo Bank purposely submitted false statements to a court in a Stipulation, without serving Greenstein notice.

That stipulation allowed Wells Fargo Bank to get an Order that deprived

Greenstein of the $175,000 guaranteed to her by Federal law. This

deprivation caused Greenstein to be homeless for five years; this

homelessness caused deep and irreparable emotional harm. Anybody, including decision-makers at Wells Fargo Bank, would know that taking someone's home by deceitful and unlawful methods, and thus causing her to be homeless, especially at a late stage of life, would cause horrific emotional injuries.

Actual damages under 11 U.S.C.S. § 362(k)(1) include both physical damages and economic damages. Readily ascertainable damages items commonly include value of personal property lost, payment improperly taken, cost of towing, cost of replacement vehicle, lost wages, lost vacation, travel expenses, value of inventory and fixtures sold, alternative transportation expense, alternative housing expense, value of items stolen while dispossessed, mileage to and from attorney's office, and state-court litigation expenses.

More speculative damages have included lost business, loss of promotion in business workplace, and loss of business opportunity. Emotional distress damages are also commonly the subject of awards of actual damages. The common element in actual damages awards appears to be the but for analysis familiar in tort law. If a consequence would not have occurred but for the automatic stay violations, then courts make awards based on that consequence. Sundquist v. Bank of Am., N.A., 566 B.R. 563 *, 2017 Bankr. LEXIS 809 (Bankr. E.D. Cal. March 23, 2017)

11 U.S.C.S. § 362(k)(1) provides that Individuals injured by any willful violation of the automatic stay shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances may recover punitive damages. To recover damages under § 362(k), a debtor must prove by a preponderance of the evidence, that: (a) a bankruptcy petition was filed; (b) the aggrieved debtor is an individual; (c) a creditor had notice of the petition; (d) the creditor's actions were willful and violated the stay; and (e) the debtor is entitled to a form of relief provided by § 362(k). In re Swindle, No. 17-18575, 2018 Bankr. LEXIS 351, at *1 (Bankr. N.D. Ill. Feb. 7, 2018).

Types of damages include costs, actual damages, and emotional damages due to the violation. *Sternberg v Johnston*, 595 F.3d 937, 943 and 946-948 (9th Cir. 2010).

This panel and the 9th Circuit decision shows the court knows this type of situation not only to be a harm reasonably known to all, but an irreparable one, too. *Sundance Land Corp. v. Community First Fed'l Sav. & Loan Ass'n,* 840 F.2d 653, 661 (9th Cir. 1988).

Greenstein has not been compensated for her damages yet, so her claim is not "moot." *In re Davis* 177 BR 907, 911-912 (9th Cir BAP 1995).

VI.     **THE BANKRUPTCY COURT ERRED IN RULING THAT
        FAILURE OF APPELLEE'S COUNSEL TO DISCLOSE FACTS
        IN THE STIPULATION SUGGESTING THAT LIPKIS DEED IS**

# A FORGERY WOULD NOT CONSTITUTE A FRAUD ON THE COURT.

## A. Appellee's Counsel Violated its Duty of Candor

A lawyer's duty of candor is also laid out in the California Business and Professions Code. California Business and Professions Code Section 6068(d) states that it is the duty of an attorney to "employ, for the purpose of maintaining the causes confided to him or her, those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law."

California Business and Professions Code Section 6128 imposes misdemeanor criminal liability on a lawyer who engages in or consents to any deceit or collusion "with intent to deceive the court or any party." (BP 6128(a)) Punishment for violating this section is up to a six-month jail sentence or a fine of up to $2,500 or both.

The bankruptcy court erred when it stated "that anyone at Wells Fargo (let alone its CEO John Stumpf) would fabricate the Lipkis Deed to deprive Greenstein of her rights in an as-yet-unfiled bankruptcy makes no sense."

It makes absolute sense. It is common knowledge that Wells Fargo Bank has done many similar things. Wells Fargo Bank garnered $276,000 it would not have gotten if it did not get an In-Rem order, which it could not

have done without creating a false document. Additionally, it is general knowledge that Wells Fargo Bank published a manual that instructed attorneys how to create false documents for the purpose of illegally foreclosing on homes.

"Wells Fargo (<u>WFC</u>) is being accused of developing a 150-page manual for generating bogus mortgage documents to justify home foreclosures, according to a lawsuit filed in federal court in New York last week.

The manual is attorney Linda Tirelli's "smoking gun" in a lawsuit she filed on behalf of a homeowner. The story was first reported in the *New York Post*, and Tirelli does have some past experience bringing these kinds of lawsuits to court." The fact that the above was published in the New York Post and Housingwire (March 2014) supports that illegal activity by Wells Fargo Bank is well-known to the general public.

The bankruptcy court erred when it stated John Stumpf could not be found responsible for actions taken by Wells Fargo Bank.

The courts have consistently held that intentional conduct by a corporate officer will result in personal liability even though the actions were taken by the corporation (Frances T. v. Village Green Owners Association.) (1986) 42 Cal.3d 490)

In the ruling in Granoll v. Yackle, the court declared that an officer cannot "escape the consequences of his individual wrongdoing" by saying that he acted on behalf of a corporation in performance of his duties.

"A corporate officer or agent is personally liable for damages caused by his fraud or deceit, to the person directly injured thereby. As to third persons dealing with a corporation, the directors are merely agents of the corporation, their liability being the same, and if they assist or participate knowingly or recklessly without knowledge, in obtaining property by fraud or deceit, they are liable to an injured person who relies on their representations." *Provident Land Corp. v. Bartlett* , 72 Cal. App. 2d 672, 687-88 (1946); *Croeni v. Goldstein,* 55 Cal. App. 4th 754, 758 (1994)


The bankruptcy court erred when it stated that it was "not plausible" that Wells Fargo Bank created a fake grant deed.

Considering the actions of Wells Fargo Bank in this case and in other cases the last ten years, it is not only plausible that Wells Fargo Bank created a fake grant deed, but highly likely that it did so. Greenstein submitted news articles detailing deceitful and illegal activities of Wells Fargo Bank as support to show a pattern of behavior that has become public knowledge. The bankruptcy court erred by not accepting those

articles as cumulative and thereby indicative that the public's knowledge of Wells Fargo Bank's illegal behavior is so wide-spread that it meets the standard of the "reasonable man" doctrine of "public general knowledge." In re Carrsow-Franklin, 524 B.R. 33, 46-47 (Bankr. S.D.N.Y. 2015) the court states:

"Because Wells Fargo does not rely on the Assignment of Mortgage to prove its claim, the foregoing evidence is helpful to [*47] the Debtor only indirectly, insofar as it goes to show that the blank indorsement, upon which Wells Fargo is relying, was forged. Nevertheless, it does show a general willingness and practice on Wells Fargo's part to create documentary evidence, after-the-fact, when enforcing its claims, WHICH IS EXTRAORDINARY" ." (Request for Judicial Notice and Notice of Motion and Motion to Accept New Evidence, Exhibits 8, 9, 10, 11, 12, and 13 (Docket #105)

Recently, in an Article written for the Los Angeles Times by Emily Alpert Reyes; the City lawmakers of the City of Los Angeles were quoted as saying the following:

Los Angeles lawmakers pressed forward Wednesday with new requirements that likely would prevent Wells Fargo from hanging on to a multimillion-dollar contract with the city.

The decision is the latest fallout from the scandal surrounding Wells Fargo, which admitted to creating as many as 3.5 million accounts without customer permission. Last year, it agreed to pay <u>$185 million</u> in fines and penalties to regulators, including the office of Los Angeles City Atty. Mike Feuer, who sued the bank following a <u>Times investigation</u> into its sales practices.[1]

A federal court has the inherent power to vacate its own judgment upon proof that a fraud has been perpetrated upon the court; this historic power of equity to set aside fraudulently begotten judgments is necessary to the integrity of the courts; moreover, a federal court has the power to conduct an independent investigation in order to determine whether the court has been the victim of fraud. <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 35, 111 S. Ct. 2123, 2128 (1991)

## B. Appellee Committed Perjury

Wells Fargo Bank lied at Oral Arguments of BAP hearing when asked if fake deed had been recorded. Transcript from Oral Arguments, Bankruptcy Appellate Panel No. CC-14-1101, July 23, 2015. Page 3, line 17 through page 4 line 1:

THE COURT; Why on earth wouldn't the record title holder get notice of an in-rem order affecting the recording title holder's property?

MR. BAILEY: Well, the –

THE COURT: I mean, that would seem to be pretty elementary.

---

[1] http://www.latimes.com/local/lanow/la-me-ln-banking-ordinance-20171212-story.html

MR. BAILEY: At that point it appears that she's not the record title holder, right

THE COURT: Oh, because of the quitclaim deed.

MR. BAILEY; Correct. Correct.

Wells Fargo knew that Appellant was the record title holder and had always been aware of that fact. Additionally, it had been put on notice that she denied the validity of the Grant Deed, so at the very least, she had an interest – or possible interest – in the property and therefore should have gotten notice.

Also, p. 8, line 13 through page 9, line 2:

THE COURT: All right. You're trying to (indiscernible) I just have one question. Was that deed recorded?

    MR. BAILEY: The *In Rem* order?

    THE COURT: No, the deed. The deed from Tamakus (phonetic?)

    MR. BAILEY: Well --

    THE COURT: the fake deed.

    MR. BAILEY: Right.

    THE COURT: The alleged fake deed.

    MR. BAILEY: The version that we have of it, there's a number that looks like a five or six. Appellants has submitted a document that reflects that if

> it is a five it wasn't recorded. I don't know from the record that I have if
> it was a six if it was recorded.

First of all, Wells Fargo Bank has submitted to the courts many times the document in which the numbers are clear. . (First Amended Complaint in Adversary Proceeding #1:15-ap-01220-MB, exhibit D, Docket #30)  Secondly, it is not plausible that with that document being the center of attention in this case, that Wells Fargo Bank did not ascertain its validity, because if deed was valid and/or recorded, Wells Fargo Bank certainly would have presented proof of the recording to court. Additionally, an average person who wanted to determine if the purported deed had been filed and was unsure if one number was a 5 or 6, would look up both numbers. Since Wells Fargo had a team of lawyers who could easily have done this simple task, it was required of them, having been put on notice that Appellant was claiming the purported document had not had not been filed.

Additionally, Wells Fargo Bank knew the Grant Deed was false and not "received" by Wells Fargo Bank, N.A. on the date it claimed; from November 22, 2011, when plaintiff was granted a temporary restraining order against Defendant selling her home, in case #LC095160 in the Superior Court of Los Angeles County, until the Case Management hearing on February 10, 2012, in the same case, Wells Fargo Bank, N.A. continued to litigate the case. It claimed the alleged deed was received on November 21, 2011. ("*On the eve of the trustee's sale for the subject*

*property, Wells Fargo's designated trustee received by fax a copy of the Lipkis Grant Deed as well as notification that Mr. Lipkis had filed for bankruptcy protection."* (Reply to Debtor's Opposition to Wells Fargo Bank, N.A's Motion to Dismiss the Adversary Complaint., *(*P.3, line 24 – p.4, line 1)) and Exhibit M, para. 2)

       Further proof that Defendant Reeves knew the Grant Deed was false and not "received" by Wells Fargo Bank, N.A. on the date it claimed, is that from November 22, 2011, when plaintiff was granted a temporary restraining order against Defendant selling her home, in case #LC095160 in the Superior Court of Los Angeles County, until the Case Management hearing on February 10, 2012, in the same case, Wells Fargo Bank, N.A. continued to litigate the case. It claimed the alleged deed was received on November 21, 2011. (*"On the eve of the trustee's sale for the subject property, Wells Fargo's designated trustee received by fax a copy of the Lipkis Grant Deed as well as notification that Mr. Lipkis had filed for bankruptcy protection."* (Exhibit  P, Reply to Debtor's Opposition to Wells Fargo Bank, N.A's Motion to Dismiss the Adversary Complaint., *(*P.3, line 24 – p.4, line 1)) and Exhibit M, para. 2). Wells Fargo Bank knew that the sale had been postponed due to the Temporary Restraining Order Appellant was granted against Wells Fargo Bank selling her home.

Wells Fargo Bank, N.A. filed at least 4 documents between November 22, 2011 and February 10, 2012; the purported Grant Deed was not mentioned in any of them. Wells Fargo had the burden to produce said evidence, yet it did not.  Rein v Providian, *270 F.3d 895* (9th Cir. 2001).

### C.  Appellee Submitted False Evidence

The bankruptcy court erred when it stated that in the case of Greenstein v. Wells Fargo Bank, N.A., the only party who was advantaged by the purported, but fake, grant deed, was Ms. Greenstein. This is a statement that Wells Fargo Bank has been making throughout the proceedings. It is false.

Not only did Wells Fargo Bank, N.A. submit a stipulation with statements it knew to be false, it moved in the state court case to have the case removed to Limited Jurisdiction by presenting a purported Grant Deed without due diligence in researching the validity of said document. It was greatly advantaged that by presenting the fake grant deed; it succeeded in getting the case, a case in which Appellant had been granted a Temporary Restraining Order, moved to Limited Jurisdiction.

Further, Wells Fargo Bank knew that other people had been filing bankruptcies, and knew that if Greenstein did so, the only way Wells Fargo Bank would get MORE money than the amount of the mortgage was to

obtain an "in rem" order against her property. According to Zillow.com, Greenstein had $300,000 to $400,000 worth of equity in her home. (Indeed, Wells Fargo Bank sold her home for $276,000 more than it claimed it was owed on the mortgage – while her Motion to Reverse Foreclosure Sale Made in Violation of the Automatic Stay was still pending. Even Wells Fargo Bank's tax form "Acquisition or Abandonment or Secured Property for 2012 indicated a fair market value of $145,962.79 over the outstanding balance of the mortgage.) (Motion to Set Aside Sale of Property Made in Violation of the Automatic Stay, exhibit E.)

Rule 3.3: **Candor Toward the Tribunal.**

*Advocate*

Rule 3.3 Candor Toward the Tribunal

(a) A lawyer shall not knowingly:

(1) **make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer**;

(2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

(b) A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

(c) The duties stated in paragraphs (a) and (b) continue to the conclusion of the proceeding and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

(d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.

"Our analysis is informed by what Congress did in 2005, when it enacted an amendment to § 362 that authorizes a stay relief order to have effect in other cases when the court determines that the filing of the petition was part of a scheme to

hinder, delay, and defraud creditors. The new § 362(d)(4) provides: (4) with

respect to a stay of an act against real property under subsection (a), by a creditor

whose claim is secured by an interest in such real property, **if the court finds** that

the filing of the petition was part of a scheme to delay, hinder, and defraud

creditors that involved either– (A) **transfer** of all or part ownership of, or other

interest in, such real property without the consent of the secured creditor or court

approval; or (B) **multiple bankruptcy filings** affecting such real property.

(*Johnson v. TRE Holdings* LLC (In re Johnson), BAP No. CC-05-1268 (9th Cir.

B.A.P. 2006)

In this case, the court did not have a "finding" – it accepted the stipulation of

two attorneys, and the statements to which they stipulated were untrue. The court

was not presented with any evidence of a scheme to delay, hinder and defraud

creditors and the two requirements of such were not met: there was no transfer of

all or part ownership of, or other interest in, such real property without the consent

of the secured creditor or court approval and there were not multiple bankruptcy

filings affecting such real property.

Attorneys cannot testify and without a verified complaint and actual

testimony from those harmed, the attorney testimony is not valid. It has long been

considered a rule of law that matters not presented by record may not be supplied

either by statements of counsel in brief or by purported copies of documents

printed therein. Woolford v. Denbow (1963, Cal App 2d Dist) 216 Cal App 2d 200,

30 Cal Rptr 794, 1963 Cal App LEXIS 2005.  Cal Rules of Court, Rule 8.200

The bankruptcy court erred when it took the word of Wells Fargo

Bank's counsel that Wells Fargo Bank "concluded" that the fake grant deed

was real, without any testimony from Wells Fargo Bank as to how it came to

that determination, on what evidence it based that conclusion, or indeed, if

it really did reach that conclusion at all. There was no mention of a genuine,

certified document, signed by a bona fide notary under the penalty of

perjury in the state of California; no verification of facts; no supporting

evidence; no declarations; nothing at all to support that the purported deed

as valid.

The bankruptcy court erred when it did not take into account its own

observation during a hearing that if Greenstein had known about the In-Rem

Order prior to filing her bankruptcy, she might not have filed a bankruptcy.

**WHY SHOULD THIS APPEAL BE GRANTED?**

This appeal should be granted because Appellant, can, at a trial on the merits, and as a matter of law, prove that the In-Rem Order of Judge Tighe in the bankruptcy of Roger Lipkis was void ab initio.

## RELIEF SOUGHT

Appellant seeks from this court a finding that the In-Rem Order of Judge Tighe in the bankruptcy of Roger Lipkis was void ab initio and an Order that the matter be remanded to the lower court with an order allowing Appellant to have a trial on the merits consistent with the findings consistent with findings and opinions expressed in this decision.

## ADDITIONAL NOTES FOR THE BENEFIT OF THE COURT

Judge Barash erred when he said his job was to support Ahart's ruling. If the Bankruptcy Appellate Panel found in favor of Ahart's ruling it would have said that; instead, the BAP requested the issue be decided on its merits (find BAP ruling and quote appropriate statements).

There never was and never has been a Grant Deed to Lipkis and Wells Fargo Bank knew that. Here Appellant uses the "stolen car" analogy. If someone steals a car and creates a fake bill of sale, and sells the car to someone else, and later that buyer in good faith sells the car to someone else, etc., it doesn't matter how many times the car is "sold." Even if the original, lawful owner never filed a stolen car

report, it DOESN'T MATTER. If the lawful owner eventually goes to the police and wants the car back, and shows she is the original owner, the car is returned to her.

**Notes on the Memorandum of Decision**

On Page 6, lines 9-10 of the Memorandum of Decision, Judge Barash contradicted himself. He said prior to that point that the deed was a fake (number, etc.)

One page 28, L 27-28; P 29 L 1.: A factual finding is not conclusive; Appellant had no chance to show the court.

P. 29, L 8-9. There was no Grant Deed to transfer

Request Judicial Notice:

First Amended Complaint in this Adversary Proceeding

Opening Brief of Appeal (Bankruptcy Appellate Panel) CC-14-1101-KiBrD

Request Judicial Notice and Notice of Motion to Accept New Evidence, filed October 13, 2016.

Of note: Wells Fargo Bank, N.A. sold the property to Marty and Patricia Duran in February 2014 while the above-referenced appeal was pending.

Of minor note: Appellant's Homeowner's Exemption would have been $175,000, not $150,000, which courts have been stating. The higher amount is due to her age at the time of the filing of her bankruptcy.

Under 11 U.S.C. § 362(a), a bankruptcy petition "operates as a stay" of certain actions against property of the debtor and of the estate. The underlying question is whether a court nevertheless has inherent authority to preempt this statutory "automatic stay" for future bankruptcy cases by way of a stay relief order that purports to have "in rem" effect. Because we conclude that a court does not have inherent (as opposed to statutory) authority to trump future automatic stays with an "in rem" order, the foreclosure sale giving rise to this dispute was void ab initio. We REVERSE…Although Congress, in the 2005 Bankruptcy Amendments, addressed the problem of repetitive bankruptcies connected with transfers of real property by enacting a new exception to the automatic stay for "in rem" orders that meet specific criteria,1 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 1(...continued) which must be predicated upon specific findings that the filing of the petition in the prior case was part of a scheme to delay, hinder, and defraud creditors that involved either transfer of all or fractional ownership without permission or the filing of multiple bankruptcy cases. 11 U.S.C. §§ 362(b)(20) & (d)(4) (2006). 6 those amendments do not apply to this appthose

amendments do not apply to this appeal. Nor, in any event, would the "in rem"

order in this instance pass muster under the 2005 Amendments.

There was no finding of an intent to hinder, delay, and defraud creditors and no

opportunity to establish changed circumstances or other cause. Hence, we must

decide whether, in the absence of (or compliance with) the newly-enacted scheme,

the "in rem" feature of the Grimes stay relief order entitled TRE to ignore the

automatic stay in Johnson's case.

This boils down to the question of the inherent authority of the bankruptcy court.

The basic law regarding automatic stay violations in this circuit straightforwardly

renders acts in violation of the stay void ab initio. An automatic stay is created

upon the filing of the case. 11 U.S.C. § 362(a). A sale in violation of the automatic

stay is void ab initio. Schwartz v. United States (In re Schwartz), 954 F.2d 569,

571 (9th Cir. 1992). This is true even if the case is later dismissed as a bad faith

filing. 40235 Washington St. Corp. v. Lusardi, 329 F.3d 1076, 1080 (9th Cir.

2003), cert. denied, 540 U.S. 983 (2003). After the case is dismissed, the

court may annul the automatic stay, thereby retroactively ratifying an act otherwise

violative of the stay. Id., at 1080 n.2; Davis, 177 B.R. at 911. The court may also

impose sanctions for stay violations, even if it annuls the stay. Williams v. Levi (In

re Williams), 323 B.R. 691, 702 (9th Cir. BAP 2005). Thus, since the sale at issue

occurred while the stay was in effect and occurred without the benefit of relief

from stay, the sale is void unless the "in rem" feature of the Grimes order dictates a contrary result. **No order vacating the sale was required because, as a matter of law, the sale was void**, unless and until the bankruptcy court acted to annul the automatic stay. Hence, the relief requested in the form of declaring that the sale was void was not "new" relief. Rather, it was relief that automatically followed from the existence of the stay violation. Lusardi, 329 F.3d at 1080. Similarly, it is settled that a bankruptcy court continues to have jurisdiction to annul the stay and to impose sanctions for stay violations. Lusardi, 329 F.3d at 1080; Davis, 177 B.R. 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 2 The discretionary abstention statute provides: (c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. 28 U.S.C. § 1334(c)(1) (2006) (reference to chapter 15 added by 2005 Amendments). 8 907, 911 (9th Cir. BAP 1995); Williams, 323 B.R. at 702. Nor can the court's expression of refusal to exercise any discretion that it may have to "extend jurisdiction" be construed as discretionary abstention under 28 U.S.C. § 1334(c)(1).2 The court made none of the findings necessary to establish a predicate — interest of justice, comity with state courts, or respect for state law — for such abstention. (4) with respect to a

stay of an act against real property under subsection (a), by a creditor whose claim

is secured by an interest in such real property, if the court finds that the filing of

the petition was part of a scheme to delay, hinder, and defraud creditors that

involved either– (A) transfer of all or part ownership of, or other interest in, such

real property without the consent of the secured creditor or court approval; or (B)

multiple bankruptcy filings affecting such real property. If recorded in compliance

with applicable State laws governing notices of interests or liens in real property,

an order entered under paragraph (4) shall be binding in any other case under this

title purporting to affect such real property filed not later than 2 years after the date

of the entry of such order by the court, except that a debtor in a subsequent case

under this title may move for relief from such order based upon changed

circumstances or for good cause shown, after notice and a hearing. Any Federal,

State, or local governmental unit that accepts notices of interests or liens in real

property shall accept any certified copy of an order described in this subsection for

indexing and recording. The structure of what Congress deemed it necessary to do

in the post-2005 regime embodied by §§ 362(b)(20) and (d)(4) confirms the

validity of our conclusion that the pre-2005 Code did not authorize an "in rem"

stay relief order to trump the automatic stay in future cases. 26 27 28

1(...continued) which must be predicated upon specific findings that the filing of

the petition in the prior case was part of a scheme to delay, hinder, and defraud

creditors that involved either transfer of all or fractional ownership without

permission or the filing of multiple bankruptcy cases. 11 U.S.C. §§ 362(b)(20) &

(d)(4) (2006).

## CONCLUSION

There are many ways in which the court erred in making the Order that is the

basis for this appeal, any one of which qualify as ample grounds to reverse its

decision. Two major points that deserve emphasis are that the court erroneously

concluded that the "Grant Deed" exists and that its existence is not disputed, and

that Greenstein had transferred all or part of the property to Roger Lipkis. These

clearly erroneous findings of irrefutable, material facts warrant a reversal of the

court's ruling.

A court abuses its discretion 'when it bases its decision on an erroneous view

of the law or a clearly erroneous view of the facts.' " *First Fed. Bank of Cal. v.*

*Cogar (In re Cogar), 2n re10 B.R. 803, 808, (B.A.P Cir. 1997)* (internal citation

omitted) (quoting *Lewis v. Tel. Employees Credit Union,* 87 F.3d 1537, 1557 (9th

Cir1996)):

A district court abuses its discretion when:

☐     District court does not apply the correct law or rests its decision on a
clearly erroneous finding of a material fact. *See Jeff D. v. Otter*, 643 f.3d

64

278 (9th Cir. 2011)(citing *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004)).

For the reasons stated above, this court should reverse the order of the lower court and remand the matter to the lower court with instructions to proceed in conformity with the ruling of this court.

*Laurel Greenstein*

*April 8, 2018*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B), Fed. R. App. P.  This certificate was prepared in reliance on the word count from the word processing system (Microsoft Word) used in this brief.  More specifically:

1. This brief contains [   **11,791**   ] words, exclusive of portions exempt by Rule

32(f) Fed. R. App. P.

2. This brief was prepared in proportionally-spaced typeface using Microsoft Word in Times New Roman, 14-point font.

Laurel Greenstein,
Appellant-Pro Se                     April 8, 2018

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day of **April 9,** 2018, the foregoing document

was furnished in person to:

Honorable Otis D. Wright, III, U.S. Bankruptcy Court Judge c/o the Clerk of the

Court; Spring St., Los Angeles, CA

And by U.S.Postal Service to:

Appellees' Counsel;

Robert A Bailey 301 N Lake Ave #1100 Pasadena, CA 91101 626-535-1900

Toriana S Holmes Severson & Werson PC One Embarcadero Ctr Ste 2600 San
Francisco, CA 94111

Dean A Reeves AFRCT LLP 199 S Los Robles Ave Ste 600 Pasadena, CA 91101-
2459 626-535-1900 Fax : 626-577-7764

Gerald N Sims 401 B St #1500 San Diego, CA 92101 619-687-5200

Marisol A Nagata Barrett Daffin Frappier Treder & Weiss 20955 Pathfinder Rd
Ste 300 Diamond Bar, CA

Darlene C Vigil Barrett Daffin Frappier Treder Weiss LLP 20955 Pathfinder Rd
Ste 300 Diamond Bar, CA 91765

Laurel Greenstein
Appellant, Self-Represented

April 9, 2018